IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH A. BECKWITH, *as administratrix of the* ESTATE OF SAMANTHA R. BECKWITH, | ) ) ) ) | Case No. 3:18-cv-40 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| BLAIR COUNTY, *operating as* BLAIR COUNTY PRISON, MICHAEL JOHNSTON, RANDY POLLOCK, and PRIMECARE MEDICAL, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is Plaintiff Deborah A. Beckwith's ("Plaintiff") Motion to Compel Discovery (ECF No. 34). Plaintiff, as administratrix of the estate of Samantha R. Beckwith ("Samantha"), seeks to compel production of an unredacted copy of the Pennsylvania Department of Corrections Full Scale Assessment of the Blair County Prison Operations (the "DOC Report") from Defendant Blair County (the "County"), operating as the Blair County Prison (the "Prison"). On December 19, 2018, the County filed a Response in Opposition (ECF No. 38), arguing that the redacted portions of the DOC Report are protected from disclosure by the deliberative process privilege and the law enforcement investigatory privilege (*id.* ¶ 6).

Plaintiff's Motion has been fully briefed (ECF Nos. 34, 38) and is now ripe for disposition. For the reasons stated below, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion.

1

## II. Jurisdiction & Venue

Plaintiff brings four claims pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution. (ECF No. 11 ¶¶ 37, 49, 62, 70.) Because these claims arise under the Constitution and laws of the United States, this Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343. Furthermore, the Court has supplemental jurisdiction over Plaintiff's four state-law claims pursuant to 28 U.S.C. § 1367(a).

Because this case was originally filed in the Court of Common Pleas of Blair County, Pennsylvania, venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1441(a). *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953) (explaining that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending").

## III. Factual and Procedural History[1]

On March 3, 2018, Plaintiff filed an Amended Complaint (ECF No. 11) against the County, Prime Care Medical, Inc., Michael Johnston, and Randy Pollock (collectively, "Defendants"). In the Amended Complaint, Plaintiff alleges that Samantha suffered from diagnosed manic-depressive/bi-polar disorder and took daily medication for her conditions. (*Id.* ¶ 16.) If she did not receive her medication, Samantha would engage in erratic behavior and occasionally become suicidal. (*Id.*)

In September 2016, Samantha was arrested and incarcerated at the Prison. (*Id.* ¶ 15.) Because Samantha had been incarcerated at the Prison on ten different occasions since 2012 and

---

[1] Unless noted otherwise, the facts discussed are taken from Plaintiff's Amended Complaint (ECF No. 11). The Court limits its factual discussion to facts involving the County, as the County is the object of the present Motion to Compel Discovery.

2

had various medical and other issues during those periods of incarceration (*id.* ¶ 17), Defendants knew of Samantha's medical conditions and of her need for medication (*id.* ¶ 18). However, upon Samantha's incarceration in September 2016, Defendants did not access or review Samantha's medical records. (*Id.* ¶ 20.) She was thus not given her medication. (*Id.* ¶ 21.)

Samantha informed prison staff that she intended to commit suicide (*id.* ¶ 22) and she was placed on "suicide watch" for a limited time (*id.* ¶ 23). However, Defendants took Samantha off suicide watch without any medical assessment. (*Id.* ¶ 24.) Samantha committed suicide on October 24, 2016 inside her prison cell. (*Id.* ¶ 26.)

Plaintiff alleges that Samantha's death was a result of the Prison's defective policies and procedures. (*Id.* ¶ 34.) Plaintiff brings a claim against the County, operating as the Prison, for violations of Samantha's Eighth and Fourteenth Amendment rights.[2] (*Id.* ¶ 37.)

The County filed an Answer to the Amended Complaint (ECF No. 23) on May 9, 2018.

On December 6, 2018, Plaintiff filed a Motion to Compel Discovery (ECF No. 24) from the County. In her Motion, Plaintiff argues that the County should be compelled to produce an unredacted copy of the DOC Report as the Report is not privileged or, if it is privileged, the County waived any applicable privileges. (*Id.* ¶¶ 6-7.)

In response, the County argues that the redacted portions of the DOC Report are protected by the law enforcement investigatory privilege and the deliberative process privilege. (ECF No. 38 ¶ 6.) Furthermore, the County asserts that it has not waived its privileges. (*Id.* ¶ 7.) To support its assertions of privilege, the County attached the affidavit of Ted Beam, the Vice-President of

---

[2] Plaintiff also brings constitutional and state-law claims against Defendants Johnston, Pollock, and PrimeCare Medical, Inc. (*See* ECF No. 11.) On May 11, 2018, the Court dismissed Count IV against PrimeCare to the extent it asserted a Fourth Amendment Claim. (*See* ECF No. 24.)

the Prison Board (the "Board") and a Commissioner of the County. (ECF No. 38-3 ¶ 1.) Mr. Beam, who personally reviewed the DOC Report (*id.* ¶ 15), was designated by the Board to execute an affidavit explaining the bases for the County's assertions of privilege as to the DOC Report. (*Id.* ¶ 3.) The County also attached its privilege log, which indicates which privilege it asserted as to what parts of the DOC Report. (ECF No. 38-1.)

After reviewing the Motion and Response, the Court ordered the County to produce a hard copy of the unredacted DOC Report to the Court for in camera review. (ECF No. 40.) The County complied.

At the start of the Court's review, the Court noted that the DOC Report is a nearly 300-page document, including the main Report and various attachments and exhibits, that was created following a voluntary assessment of the Prison's operations. The assessment was conducted by the DOC at the behest of the Board in light of certain retirements and issues at the Prison. Teams of individuals evaluated Prison policies and procedures in areas including staffing, vulnerability, sexual assault, mental health, training, and maintenance. The teams then identified issues and made recommendations related to these categories. The Court reviewed the entirety of the Report and its attachments when conducting its in camera review.

## IV. Legal Standard

Federal Rule of Civil Procedure 26 provides the general framework for discovery in federal civil litigation. Rule 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A matter is relevant if "it has any tendency to make a fact more or less probable

4

than it would be without the evidence; and . . . the fact is of consequence in determining the action." *See* Fed. R. Evid. 401.

Rule 37 provides the mechanism to compel discovery from a person or party who refuses to provide discovery. The party moving to compel discovery under Rule 37 bears the initial burden of proving the relevance of the material requested. *See Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) (citations omitted). If the movant meets this initial burden, the burden shifts to the person resisting discovery to establish that discovery of the material requested is inappropriate. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (citation omitted). The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient. *See Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982).

## V. Discussion

Here, Plaintiff seeks to compel production of the unredacted DOC Report. The County seeks to prevent disclosure of two distinct types of information: (1) the identities of those who participated in the creation of the DOC Report; and (2) observations, recommendations, and deliberations made in the DOC Report. The Court finds that the identities of the individuals who participated in the DOC assessment are protected from disclosure by the law enforcement investigatory privilege. The Court also finds that observations, recommendations, and deliberations in the DOC Report are protected by the deliberative process privilege; however, the Court will require the County to disclose certain segments of the Report that contain factual instead of deliberative information.

5

## A. The names of individuals who assisted in the creation of the DOC Report are protected by the law enforcement investigatory privilege.

First, the County asserts that the law enforcement investigatory privilege protects the identity of those individuals who provided information for the DOC Report. (ECF No. 38 ¶¶ 13, 14-17.)

Preliminarily, the identities of the individuals who participated in the creation of the DOC Report have no bearing on Plaintiff's case and Plaintiff has made no specific arguments as to the relevance of the names. As the Court cannot compel production of irrelevant evidence, the Court will **DENY** Plaintiff's Motion to Compel to the extent she seeks disclosure of the identities of the individuals who participated in the creation of the DOC Report.

However, even if the identities were relevant, the Court would still deny this portion of the Motion to Compel on the basis of the law enforcement investigatory privilege. The law enforcement investigatory privilege is a form of executive privilege, which has been defined as "the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342 (E.D. Pa. 1973); *see also Crawford v. Dominic*, 469 F. Supp. 260, 264 (E.D. Pa. 1979) (explaining that executive privilege is "designed only to protect documents whose disclosure would so seriously hamper the operation of government that they should be kept secret notwithstanding their utility, or even indispensability, in establishing a litigant's claim"). "[W]hen executive privilege is asserted, the court must balance the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data, not otherwise available to him, with which to pursue a non-frivolous cause of action." *Frankenhauser*, 59 F.R.D. at 344. The court in *Frankenhauser v. Rizzo*

6

identified ten factors for district courts to consider when conducting this balancing, although the court also recognized that "the balancing task will often be difficult and the ingredients of the test will vary from case to case." *Id.* The factors include:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.* The "weightiest of these factors" is the importance of the information to the plaintiff's case. *Crawford*, 469 F. Supp. at 263.

Although the U.S. Court of Appeals for the Third Circuit has not adopted this test, this Court has previously explained that it "believes that the Third Circuit would adopt [*Frankenhauser*'s] balancing test if presented with the question." *Smith v. Rogers*, Case No. 3:15-cv-264, 2017 WL 2937957, at *7 (W.D. Pa. July 10, 2017) (Gibson, J.); *see also Parno v. Kane*, Civil No. 1:16-cv-1949, 2017 WL 5900477, at *3 & n.2 (M.D. Pa. Nov. 30, 2017) (identifying the *Frankenhauser* factors and agreeing with this Court in *Smith* that the Third Circuit would likely adopt *Frankenhauser*'s balancing test); *Carusone v. Kane*, Civil No. 1:16-cv-1944, 2017 WL 5900429, at *3 & n.2 (M.D. Pa. Nov. 30, 2017) (same). Thus, this Court will apply the *Frankenhauser* factors in order to determine whether the law enforcement

investigatory privilege protects the identity of individuals who provided information for the DOC Report.

The Court finds that factors one through three—the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; the impact upon persons who have given information of having their identities disclosed; and the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure—favor protection from disclosure. *See Smith*, 2017 WL 2937957, at *7. The County persuasively contends that disclosure of the identities of individuals who participated in the creation of the DOC Report, which identifies numerous problems with prison operations and management, would deter individuals from participating in such evaluative processes in the future and would also discourage the Prison from engaging in voluntary self-evaluation. (ECF No. 38 ¶¶ 24; ECF No. 38-3 ¶¶ 16, 25.)

In response, Plaintiff argues that she could sign a confidentiality agreement relating to the DOC Report so as to ensure the protection of the identities of participating individuals. (ECF No. 34 ¶¶ 23-24.) However, confidentiality agreement or not, revealing the identities of those who participated in the creation of the DOC Report to parties during the course of litigation would still likely discourage individuals from assisting with similar DOC assessments for fear of becoming involved in litigation (ECF No. 38-3 ¶ 25).

With regard to the other *Frankenhauser* factors, factor four weighs in favor of disclosure because the information sought—the identities of individuals who assisted in the preparation of the DOC Report—is factual as opposed to evaluative. Factors five

8

through nine also similarly weigh slightly in favor of disclosure—there is no contention that Plaintiff is an actual or potential defendant in any criminal proceeding likely to follow from the DOC assessment;[3] the DOC assessment of the Prison is complete; the County has not asserted that disciplinary proceedings arose from the DOC assessment (ECF No. 34 ¶ 28; ECF No. 38 ¶ 28); there is no indication that Plaintiff's suit is frivolous (ECF No. 34 ¶ 29; ECF No. 38 ¶ 29); and the names of the individuals who participated in the Report's preparation are likely not available from other sources. However, while these factors provide some support for Plaintiff's request of disclosure, they are not particularly relevant to the facts of this case. *See Smith*, 2017 WL 2937957, at *7 (concluding, under similar circumstances, that "[t]he other *Frankenhauser* factors are either inapplicable in the context of this case or do not outweigh the first three factors").

Moreover, factor ten, the importance of the information sought to the plaintiff's case, weighs in favor of protection. Plaintiff does not explain why the names of those who assisted in the creation of the Report are important (or even relevant) to her case. Furthermore, Plaintiff can get the names of individuals who have knowledge of the factual circumstances underlying her claims through other discovery—Plaintiff does not need the DOC Report to identify individuals with such knowledge.

Thus, the Court concludes that the *Frankenhauser* factors weigh in favor of protecting the identities of those individuals who participated in the creation of the DOC Report. This decision comports with this Court's 2017 Memorandum Opinion and Order

---

[3] Although Defendants argue that Plaintiff was convicted in 2018 on felony drug charges, they do not contend that such charges relate in any way to the DOC Report's preparation, and this Court does not see how the charges could be so related. Thus, factor five weighs in favor of disclosure.

9

in *Smith v. Rogers* in which the Court held that the names of individuals who provided information during a previous DOC assessment of the Prison were protected by the law enforcement investigatory privilege. *See Smith*, 2017 WL 2937957, at *7.

The Court also finds that the County's redactions of the Report, as they relate to the assertion of the law enforcement investigatory privilege, are generally appropriate. Although the Court is concerned by numerous inconsistencies in the County's redactions, such as redacting names or titles at certain points but failing to redact those names or titles in other identical circumstances, the Court recognizes the difficulty in engaging in a completely consistent review of a nearly 300-page document. Moreover, as discussed previously, the Court concludes that the names of those who participated in the preparation of the DOC Report are not relevant to Plaintiff's claims. Thus, the Court declines to compel production of the identities of those who assisted with the preparation of the DOC Report. However, the Court cautions the County that redactions based on assertions of privilege should be undergone with extreme care—inconsistent redactions detract from claims of privilege, particularly when those claims are based on the protection of identities.

Thus, the Court will **DENY** Plaintiff's Motion to Compel Discovery with regard to the identities of those who assisted in the preparation of the DOC Report.

### B. The deliberative process privilege protects the Report's opinions and recommendations, but not its severable factual information.

The County next asserts that the rest of the DOC Report's redacted portions is protected by the deliberative process privilege.

The Supreme Court articulated the logic behind the deliberative process privilege in the 1975 decision of *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), although the Court did not yet call the privilege by this name. In *N.L.R.B.*, the Court explained that the privilege, which is a form of executive privilege, rests on "the policy of protecting the decision making processes of government agencies." *Id.* at 150 (citations and quotation marks omitted). The Court explained that if an agency's pre-decisional communications are subject to disclosure, the agency may stop engaging in candid discussions on policy matters, which may affect the quality of agency decisions. *Id.* at 150-51 (citations and quotations omitted). Thus, the privilege protects pre-decisional communications[4] that "reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 150. Factual material is not protected as long as it is severable from the deliberative information, even if the factual information is located in an otherwise privileged document. *See Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995); *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987); *Smith*, 2017 WL 2937957, at *3.

Although the Supreme Court discussed the privilege in terms of federal agencies, this Court has allowed state and local governments to assert the privilege because "the privilege's motivating rationale is implicated regardless of whether the deliberations occurred at the federal, state, or local level." *Smith*, 2017 WL 2937957, at *4.

In order to invoke the deliberative process privilege, the head of the governmental body claiming the privilege must (1) personally review the purportedly privileged documents; (2)

---

[4] The privilege does not protect post-decisional communications that explain decisions. *See N.L.R.B.*, 421 U.S. at 150.

identify and specifically describe the documents; and (3) give "precise and certain reasons," usually through an affidavit, for the privilege's applicability. *See United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980) (quoting *Smith v. Fed. Trade Comm'n*, 403 F. Supp. 1000, 1016 (D. Del. 1975)).

When the privilege is properly invoked, the court must engage in a two-step process. First, the Court must decide whether the privilege applies to the communications at issue. *Redland Soccer Club*, 55 F.3d at 854. The government has the initial burden of showing that the deliberative process privilege applies. *See id.* (citing *Schreiber v. Soc'y for Savs. Bancorp.*, 11 F.3d 217, 221 (D.C. Cir. 1993)).

Second, the court must balance the parties' interests, considering five factors: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Id.* (citing *First E. Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994)). At this stage, the party seeking to compel discovery has the burden of showing that its need for the privileged information outweighs the government's interest in nondisclosure. *Id.* The party seeking disclosure can do this by "showing a sufficient need for the material in the context of the facts or the nature of the case, or by making a prima facie showing of misconduct." *In re Grand Jury*, 821 F.2d at 959 (citations omitted).

Here, there is no dispute that the County properly invoked the deliberative process privilege. The County submitted the affidavit of Ted Beam, the Board's Vice-President. (ECF No. 38-3 ¶ 1.) Mr. Beam, who personally reviewed the DOC Report (*id.* ¶ 15), was designated by the Board to execute an affidavit in lieu of Board President Judge Daniel Milliron (*id.* ¶ 3). The

affidavit described the DOC Report (*id.* ¶¶ 11-14, 16) and gave precise reasons for asserting the privilege (*id.* ¶¶ 22, 25). Thus, the County's invocation of the privilege was proper and the Court must turn to the aforementioned two-step process.

After a thorough in camera review, the Court concludes that the privilege applies to most of the redacted portions of the DOC Report, as the Report contains numerous pre-decisional opinions, recommendations, and deliberations on prison policies. However, the Court finds that the following redactions were improper and a new copy of the DOC Report with these segments unredacted must be produced to Plaintiff:

1) The paragraphs labeled "Observations" on BCP 1731, 1732, and 1733, as these paragraphs contain factual material and not advisory opinions, recommendations, or deliberations (but the sentences beginning "With the number of staff," "This particular circumstance," and "This causes concern" on BCP 1732 may remain redacted);

2) The entire "facility description and operation" paragraph on BCP 1743, which consists of factual information;

3) The headers and single paragraphs immediately following the headers labeled "Main Block (A, B, C, D)", "E Block," "F Block," "G Block," "Gym (Housing)," "H Block," "Committing (Holding)," "I Block," "J Block," "K Block (Female Housing)," "K/RHU (Female RHU)," "RHU," "Main Control," "Commissary,"[5] "Dietary," "Medical," "Laundry (Maintenance/Laundry/Commissary/Garage Area)," "Inmate Receiving/Central Booking," "Visiting Room," "Yard," "Barber Shop,"[6] "Sally Port," "Mail Room," "Perimeter Fence," "Cameras" "DVR's," and "Armory" on BCP 1747 through BCP 1768;[7]

4) Under the heading "Key Control" on BCP 1770, the sentence beginning with "Housing Unit Officers have keys" through the sentence ending in "on the 3rd

---

[5] The second paragraph below the "Commissary" header may remain redacted as it contains an advisory opinion.

[6] The second paragraph below the "Barber Shop" header may remain redacted as it contains an advisory opinion.

[7] This does not include any paragraphs labeled "Issues" or "Recommendations," which can remain redacted as they contain advisory opinions and recommendations.

13

> floor," as these sentences are factual instead of advisory or recommendation-based; and
>
> 5) On BCP 1889 through BCP 1909, columns A and B as they contain factual information.[8]

As for the rest of the redactions, the Court finds that they properly cover privileged opinions, recommendations, deliberations, and facts that cannot clearly be severed from the deliberative material.[9] With regard to this privileged information, the Court must balance the parties' interests, considering five factors: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *See Redland Soccer Club*, 55 F.3d at 854 (citing *First E. Corp.*, 21 F.3d at 468).

The privileged information in the DOC Report meets the low bar for relevance,[10] as the information involves advisory opinions and recommendations on policies that Plaintiff alleges are defective and caused the death of Samantha.

Moreover, litigation surrounding prison conditions and policies and prisoner mental health is serious.

However, Plaintiff could get evidence regarding the defective nature of the Prison's policies and procedures through the use of experts—Plaintiff does not need the Report to obtain

---

[8] Columns C and D may remain redacted as they contain advisory opinions and recommendations.

[9] However, inconsistent redactions again made the Court's in camera review more laborious than necessary. While many of these inconsistencies are not relevant to the privilege issues here, they do "detract[] from [the County's] claim of privilege because [they] suggest that the privilege is being invoked without sufficient care." *Smith*, 2017 WL 2937957, at *6.

[10] A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." *See* Fed. R. Evid. 401.

evidence to support her claims.

Furthermore, the Court finds significant the possibility of future timidity by government employees should the Court order production of the privileged information. By compelling production of the information in the DOC Report in the course of litigation, the Court has serious concerns about discouraging voluntary assessments of prison policies and chilling participation in those assessments. (*See* ECF No. 38 ¶¶ 49-50; ECF No. 38-3 ¶ 22(s)-(w).) Without candid assessments of prison policies, "the quality of [prison] decisions" will likely be affected, *see N.L.R.B.*, 421 U.S. at 151, which may ultimately harm prison employees and prisoners. Plaintiff has not persuasively countered the Court's concern. Thus, the Court finds that the balance weighs in favor of protecting the privileged information from disclosure.

The Court will therefore **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion to Compel Discovery with regard to the deliberative process privilege, as delineated above.

### C. Judge Milliron did not waive the County's executive privilege.

Finally, Plaintiff argues that if the law enforcement investigatory privilege and the deliberative process privilege are applicable to the DOC Report, the County waived those privileges because the contents of the DOC Report were disclosed by the Board Chairman, Judge Daniel J. Milliron, to a local newspaper. (ECF No. 34 ¶¶ 55, 58.) Plaintiff attached the relevant newspaper article to her Motion. (*See* ECF No. 34-3.)

> In the article, Judge Milliron made the following comments about the DOC Report:
>
> Milliron said he couldn't comment on the lawsuit, but he pointed out that he, as prison board chairman, days ago received a report from the Pennsylvania Department of Corrections concerning the operation of the county prison and a plethora of recommendations on how to improve it.

15

> The judge said he cannot release the report until he has permission from DOC but stated, *"It does talk about mental health and PrimeCare."*
> A majority of the section of the report dealing with the prison's medical program is about mental health, he said.
> The report will be discussed at next week's prison board meeting.
> The report is revealing, Milliron said.
> *"We asked them (DOC) to take us apart. They granted my wish,"* he said.

(*Id.* at 3-4.)

However, Judge Milliron's comments do nothing more than indicate that (1) the DOC prepared a report on the Prison with recommendations, (2) some of the recommendations relate to mental health, and (3) the Board was planning to discuss the report. All of this information is already clear from the non-privileged portions of the DOC Report. (*See* ECF No. 34-1 at 79 (indicating that "subject matter experts would lead specialized teams in assessing specific facets of the facility" and "would generate a summary report containing any necessary recommendations")); (*id.* at 79 (specifying that the Board requested the assessment)); (*id.* at 80 (indicating that the assessment that led to the DOC Report included a mental health review).) Because Judge Milliron did not reveal any information that is itself privileged, the disclosure of the information does not waive the County's privilege. *See State of N.D. ex rel. Olson v. Andrus*, 581 F.2d 177, 181-82 (8th Cir. 1978) (finding waiver because the party claiming privilege had already disclosed the privileged information to a party in different litigation); *Shell Oil Co. v. I.R.S.*, 772 F. Supp. 202, 210 (D. Del. 1991) (finding waiver of the deliberative process privilege when the party claiming privilege read the privileged statement at a public meeting). "General statements" like Judge Milliron's that do not reveal privileged information are simply not sufficient to constitute a waiver. *See Nissen Foods (USA) Co., Inc. v. N.L.R.B.*, 540 F. Supp. 584, 587 (E.D. Pa. 1982) (declining to find a waiver of executive privilege when "general statements" of a "limited

16

nature" regarding privileged documents were disclosed); *see also Morrison v. U.S. Dep't of Justice*, CIV. A. No. 87-3394, 1988 WL 47662, at *1 (D.D.C. Apr. 29, 1988) ("To find a waiver based on a fleeting press reference to the general subject matter of a predecisional document would be to emasculate the deliberative process privilege.").

Thus, the Court declines to find a waiver of the law enforcement investigatory privilege and deliberative process privilege based on Judge Milliron's statements in the newspaper article.

## VI. Conclusion

In sum, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion to Compel Discovery (ECF No. 34). The Court declines to compel production of the identities of those individuals who participated in the creation of the DOC Report, as those names are not relevant and are protected by the law enforcement investigatory privilege. The Court also finds that most of the other redactions in the DOC Report are protected by the deliberative process privilege; however, the Court will require the County to produce certain segments of the DOC Report that were improperly redacted pursuant to the deliberative process privilege.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH A. BECKWITH, *as administratrix of the* ESTATE OF SAMANTHA R. BECKWITH, | ) ) ) ) | Case No. 3:18-cv-40 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) ) | |
| BLAIR COUNTY, *operating as* BLAIR COUNTY PRISON, MICHAEL JOHNSTON, RANDY POLLOCK, and PRIMECARE MEDICAL, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

ORDER

NOW, this 28th day of January, 2019, it is **HEREBY ORDERED** that Plaintiff's Motion to Compel Discovery (ECF No. 34) is **GRANTED IN PART** and **DENIED IN PART**. Blair County is ordered to produce unredacted versions of the following segments of the DOC Report within **fourteen days** of the issuance of this Order:

1) The paragraphs labeled "Observations" on BCP 1731, 1732, and 1733 (but the sentences beginning "With the number of staff," "This particular circumstance," and "This causes concern" on BCP 1732 may remain redacted);

2) The entire "facility description and operation" paragraph on BCP 1743;

3) The headers and single paragraphs immediately following the headers labeled "Main Block (A, B, C, D)", "E Block," "F Block," "G Block," "Gym (Housing)," "H Block," "Committing (Holding)," "I Block," "J Block," "K Block (Female Housing)," "K/RHU (Female RHU)," "RHU," "Main Control," "Commissary,"[11] "Dietary," "Medical," "Laundry (Maintenance/Laundry/Commissary/Garage Area)," "Inmate Receiving/Central Booking," "Visiting Room," "Yard," "Barber

---

[11] The second paragraph below the "Commissary" header may remain redacted.

Shop,"[12] "Sally Port," "Mail Room," "Perimeter Fence," "Cameras" "DVR's," and "Armory" on BCP 1747 through BCP 1768;[13]

4) Under the heading "Key Control" on BCP 1770, the sentence beginning with "Housing Unit Officers have keys" through the sentence ending in "on the 3rd floor"; and

5) On BCP 1889 through BCP 1909, columns A and B.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE

---

[12] The second paragraph below the "Barber Shop" header may remain redacted.
[13] This does not include any paragraphs labeled "Issues" or "Recommendations," which can remain redacted.